Filed 7/29/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>               v.<br><br>KEVIN JEROME CLARK,<br><br>    Defendant and Appellant. | A158238<br><br>(San Mateo County Super. Ct.<br>No. 17NF001837A) |

Defendant Kevin Jerome Clark appeals certain fees and fines imposed by a court order executing his original sentence following a violation of his probation.

Clark challenges a monthly $100 probation supervision fee based on the passage of Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (Assembly Bill 1869) while this appeal was pending. Assembly Bill 1869 repealed the statute authorizing the probation supervision fee, Penal Code section 1203.1b.[1] Arguing that he is entitled to the retroactive benefit of Assembly Bill 1869, Clark asks that we order vacatur of the fee imposed on him under section 1203.1b. Clark also asks that we strike a $470 "Criminal Violation Distribution" fine. He contends this fine was improperly recorded by the clerk in the abstract of judgment and is unsupported by the court's oral pronouncement of judgment.

---

[1] Undesignated statutory references are to the Penal Code.

1

Before addressing the merits, we must first determine whether the issues Clark raises are appealable. Although the Attorney General does not contest Clark's view that this appeal is cognizable under section 1237.2, appealability is a jurisdictional matter we are dutybound to address sua sponte. In doing so, we conclude that Clark's failure to bring the issues he raises here to the trial court's attention does not bar the appeal under section 1237.2. Because the $100 probation supervision fee was authorized at the time it was imposed, the "erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs [is not] the sole issue on appeal." (§ 1237.2.)

On the merits, we agree with Clark that Assembly Bill 1869 applies and that, as a result, the $100 fee must be stricken. We also agree that the $470 fine does not accurately reflect the trial court's oral pronouncement of judgment, though we reject Clark's request that we strike the fine in toto. Accordingly, we shall vacate the sentencing order, subject to reinstatement on remand with an amended abstract of judgment, which shall reflect corrections in accordance with this opinion.

## I. BACKGROUND

On February 15, 2017, Clark, a convicted felon with multiple priors, was approached by a police officer while sitting in a parked car with expired registration tags. Clark fled the scene, disposed of a loaded handgun by throwing it over a fence, and then resisted arrest, ultimately injuring the officer.

On March 17, 2017, Clark was charged with four felonies and a misdemeanor related to the events of February 15, 2017. On May 3, 2017, Clark pleaded no contest to one count of possession of a firearm by a felon (§ 29800, subd. (a)(1)), and to one count of threatening a police officer (§ 69,

2

subd. (a)).  Under the plea bargain, the prosecutor moved to dismiss the three additional counts.

At sentencing on September 8, 2017, the San Mateo County Superior Court imposed a three year and eight month state prison sentence.  The court suspended execution of the sentence and placed Clark on probation for a term of five years.  The sentence included standard conditions of one year in county jail, modifiable to residential treatment in Delancey Street, and fees and fines as follows:  "You're to pay $30 per count for a total of $60 as a criminal conviction assessment.  $40 per count for a total of $80 as a court operation assessment.  $300 restitution fund fine will be stayed pending successful completion of probation.  You will also be ordered to pay, according to your ability to pay, [a] probation cost not to exceed $100 per month."

The clerk's minutes filed after the sentencing hearing state as follows:  "Fees  [¶] The following financial obligations were imposed:  [¶] Imposed Fine $570[.] Criminal Violation Distribution $470.00[.]  Probation Supervision Fee—Felony $100.00[.]  Grand Total of All Financial Obligations:  $570.00[.]"

The suspension of the execution of the original prison sentence was contingent upon Clark successfully completing a year-long residential rehabilitation program at Delancey Street.  On June 23, 2018, Delancey Street notified Clark's probation officer that Clark left Delancey Street without permission before completing the one-year program.  On June 14, 2019, following a contested probation violation hearing, the trial court found that Clark violated the terms of his probation by leaving Delancey Street before completing the one-year program and failing to contact his probation officer.  Upon finding Clark in violation of his probation, the trial court ordered the original three year and eight month state prison sentence into

3

execution and orally pronounced that "[a] $300 probation revocation fine is imposed and all outstanding fines and fees."[2]

In the abstract of judgment, filed on June 17, 2019, the trial court listed the following fees and fines:  $300 fine (§ 1202.4, subd. (b)); $300 suspended parole revocation fine (§ 1202.45); $300 probation revocation fine (§ 1202.44); $40 court operations assessment (§ 1465.8); and $30 conviction assessment (Gov. Code, § 70373).  Under "Other orders (specify)," the abstract of judgment states:  "*Total Fine/Fees $570—Including 10% PC 1202.4(B) Admin Fee—To Be Collected by CDCR."

Clark timely appealed.

## II. DISCUSSION

### A. *Appealability Under Section 1237.2*

Effective January 1, 2016, Assembly Bill No. 249 (2015–2016 Reg. Sess.) (Assembly Bill 249) added section 1237.2 (Stats. 2015, ch. 194, § 3) to the Penal Code.  This statute provides:  "An appeal may not be taken by the defendant from a judgment of conviction on the ground of an error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction in the trial court, which may be made informally in writing.  The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs upon the defendant's request for correction.  This section only applies in cases where the erroneous

---

[2] The fees section of the minute order from the probation violation hearing is identical to the fees section of the minute order from the sentencing hearing.

4

imposition or calculation of fines, penalty assessments, surcharges, fees, or costs are the sole issue on appeal."

Despite his failure to bring any of the issues he now raises to the trial court's attention, and despite section 1237.2's express grant of continuing jurisdiction in the trial court to "correct any error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs upon the defendant's request," Clark takes the position that this appeal is cognizable because the trial court lost jurisdiction to rectify any error in the imposition of the fees and fines at issue here when he filed his notice of appeal, thus vesting exclusive jurisdiction in this court. The Attorney General argues that the September 2017 judgment was a final, appealable judgment, and Clark failed to seek review at that point—which raises a forfeiture issue that we address separately below in part II.B.—but he does not address Clark's reading of section 1237.2.

"[T]he right to an appeal is entirely statutory; unless specified by statute no judgment or order is appealable." (*Garau v. Torrance Unified School Dist.* (2006) 137 Cal.App.4th 192, 198.) Because an appealable judgment or order is essential to appellate jurisdiction, the appellate court must consider the question of appealability sua sponte, and dismiss the appeal if the judgment or order is found to be nonappealable. (*Harrington-Wisely v. State of California* (2007) 156 Cal.App.4th 1488, 1494, 1498; see *Olson v. Cory* (1983) 35 Cal.3d 390, 398 ["since the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion"].) While the parties have not joined issue on the proper interpretation of section 1237.2, we must address the issue briefly at the outset.

We conclude Clark is correct. Section 1237.2 is not a bar to this appeal, though not for the reason he gives us.

As a general matter, Clark's reading of section 1237.2 accurately states the rule that "an appeal from an order in a criminal case removes the subject matter of that order from the jurisdiction of the trial court." (*Anderson v. Superior Court* (1967) 66 Cal.2d 863, 865.)  But section 1237.2, like sections 1237.1 and 1237.5, serves as an exception to this general rule. (*People v. Jenkins* (2019) 40 Cal.App.5th 30, 37 (*Jenkins*).)  Under section 1237.2, the trial court retains jurisdiction to correct any errors related to the imposition or calculation of fines or fees, even after the filing of an appeal.  " 'There is no time limitation upon the right to make the motion to correct the sentence. . . . The court's power to correct its judgment includes corrections required not only by errors of fact (as in the mathematical calculation) but also by errors of law.' " (*People v. Jordan* (2018) 21 Cal.App.5th 1136, 1140, quoting *People v. Fares* (1993) 16 Cal.App.4th 954, 958; see *People v. Alexander* (2016) 6 Cal.App.5th 798, 801 [noting section 1237.2 broadly applies to an error in the *imposition or calculation* of fees and as such, "does not limit [its] reach only to situations where the fee simply did not apply at all or was a result of mathematical error"].)[3]

_____

[3] The *Jenkins* court lays out the pertinent legislative history.  Its thorough discussion of this history states, in part, as follows.  "Although the language of section 1237.2 is unambiguous regarding when a defendant is required to seek relief in the trial court in order to challenge the imposition or calculation of fines, assessments, and fees, we note the legislative history of section 1237.2 further supports our conclusion on this issue.  [¶] An analysis by the Assembly Committee on Public Safety regarding Assembly Bill 249, which led to the enactment of section 1237.2, discusses the reasons for the bill:  'According to the author, "[w]hen a fines and fees error is the *sole issue* on appeal, trial and appellate courts incur significant costs and burdens associated with preparation of the formal record on appeal and resulting resentencing proceedings.  AB 249 would prohibit a defendant from appealing a final conviction *solely* on the basis of an error in the imposition or

The scheme established by section 1237.2 reflects, fundamentally, a concern for judicial economy. (*People v. Jordan*, *supra*, 21 Cal.App.5th at p. 1142 [recognizing that section 1237.2 "mandate[s] that a defendant timely raise his [or her] penalty assessment claims to conserve judicial resources and efficiently present claims in a single forum"].) The general rule is that exclusive jurisdiction shifts to the appellate court once a notice of appeal is filed, but since the review of " 'erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs' " on appeal may needlessly force the expenditure of appellate resources, the statute carves out an exception preserving trial court jurisdiction to address such error. (§ 1237.2; *Jordan*, *supra*, at p. 1142.) But the exception is limited. Erroneous imposition or calculation of "fines, penalty assessments, surcharges, fees, or costs" must be the "sole issue" presented on appeal. (§ 1237.2.)

By its terms, the exception does not apply in appeals where the appellate court must deal with other issues not falling into that category. (*Jenkins*, *supra*, 40 Cal.App.5th at p. 37.) "[I]f issues *other than* the imposition or calculation of such fines, assessments, and fees are being appealed, . . . the limited exception provided by section 1237.2 to section 1235 no longer applies. In this situation, a defendant must seek relief in the Court of Appeal for any issue regarding the imposition or calculation of fines, assessments, and fees, including, if necessary, by requesting leave to file a supplemental brief. (See Cal. Rules of Court, rule 8.200(a)(4).) The Court of

---

calculation of fines, penalty assessments, surcharges, fees, or costs, *unless the issue* is raised in the trial court at the time of sentencing. AB 249 would not prohibit defendants from seeking appeals on the grounds of any substantive concern, but rather allow courts to handle the correction administratively." ' (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 249, as introduced Feb. 9, 2015, p. 2, italics added.)" (*Jenkins*, *supra*, 40 Cal.App.5th at p. 38.)

Appeal then decides *all* the issues of the case, preventing piecemeal litigation in separate forums." (*Id.* at p. 38.)

Is the "erroneous imposition or calculation of fines, penalty assessments, surcharges, fees, or costs . . . the sole issue on appeal"? (§ 1237.2.) We think not.

Clark argues that his challenge to the $470 "Criminal Violation Distribution" fine does not involve the erroneous imposition or calculation of that fine because he is challenging clerical error, not action by the court as reflected in its oral pronouncement of sentence. While ultimately we conclude that Clark's interpretation of section 1237.2 is correct, the fact clerical error is at issue is not the reason why. In fact, the clerical nature of the error he raises in attacking the $470 fine cuts against him. Clerical error occurs when the record fails to reflect what the court actually ordered (*Hamilton v. Laine* (1997) 57 Cal.App.4th 885, 891), while judicial error occurs when the record reflects what the judge actually ordered, but fails to reflect what the judge "ought to have" ordered. (*Estate of Eckstrom* (1960) 54 Cal.2d 540, 545–547.) We think the correction of clerical error is the type of ministerial error that section 1237.2 contemplates should be addressed in the first instance by the trial court, even while an appeal is pending, as the statute expressly allows. (§ 1237.2.)

But the other issue Clark raises—his challenge to the $100 probation supervision fee—is not a claim of erroneous imposition or calculation of a fee or fine, and as a result, the issues presented in this appeal in their totality do not fall within section 1237.2. Clark makes no claim that, at the time the probation supervision fee was imposed, it was unauthorized under section 1203.1b. The situation we have here is therefore one where the challenged fee was correctly imposed and correctly calculated at the time of

8

its imposition, but due to a change in the law—at least if Clark is correct that Assembly Bill 1869 applies to the $100 per month fee imposed on him—the fee lacks any *current* legal basis.  Because there was no "error in the imposition or calculation of fines, penalty assessments, surcharges, fees, or costs" (§ 1237.2) at the time the challenged fees and fines were imposed, both the letter and underlying rationale of section 1237.2 militate in favor of addressing the issue Clark raises now, rather than requiring him to bring it to the trial court's attention first by motion for correction.

So far as we can discern, this is an issue of first impression.  While no case has yet determined if challenges to the imposition of fees based on the passage of new legislation fall within section 1237.2, courts have decided similar issues in cases involving section 1237.1.  Section 1237.2 and section 1237.1 are nearly identical.  Section 1237.1 differs in that it deals with errors in the calculation of presentence credits.  In *People v. Delgado* (2012) 210 Cal.App.4th 761, 764, the People argued that the defendant should have raised the credits issue in the trial court, even though his claim arose from a change in the law while the appeal was pending.  When "the issue on appeal is not whether custody credits were miscalculated, but under which version of [a statute] those credits should have been calculated," section 1237.1 does not apply.  (*Delgado*, *supra*, 210 Cal.App.4th at p. 764.)

The *Delgado* court reasoned that the "determination of which version of a statute applies (which, as in the instant case, may require interpretation and application of principles of statutory construction and constitutional law) is much different than a mere mathematical calculation.  Whichever way a trial court rules on the former question, the losing party almost certainly will appeal." (*People v. Delgado*, *supra*, 210 Cal.App.4th at p. 767.)  Thus, the court concluded judicial economy is best advanced by deciding such issues in

9

the first instance on appeal. We now extend this reasoning to the Assembly Bill 1869 question presented here.

## B. *The $100 Probation Supervision Fee*

### 1. The Appealed Order Was Not Final for Retroactivity Purposes

On the merits, turning first to the $100 probation supervision fee, we begin by addressing whether the appealed order became final for retroactivity purposes pursuant to *In re Estrada* (1965) 63 Cal.2d 740 before Clark filed his appeal. As noted above, the Attorney General argues that Clark's failure to appeal from the 2017 sentencing judgment resulted in the forfeiture of his present claims. The trial court suspended the execution of the 2017 sentence in favor of probation, conditioned on certain terms. When Clark violated his probation in 2019, the trial court executed the original sentence, and Clark timely appealed the 2019 order.

Until recently, the finality of suspended sentences for *Estrada* retroactivity purposes was an open question in this court dependent on whether the order suspended execution or imposition of the sentence. Our recent decision in *People v. France* (2020) 58 Cal.App.5th 714, review granted February 24, 2021, S266771, determined that an order suspending execution of a sentence is not final for *Estrada* retroactivity purposes until it reaches final disposition in the highest court authorized to review it. The defendant in *France* appealed an order revoking probation and executing a suspended sentence. While the appeal was pending, the Legislature enacted Senate Bill No. 136 (2019–2020 Reg. Sess.), an ameliorative change in the law that—if retroactive, and we held that it was—benefitted the defendant. Relying primarily on *People v. Contreraz* (2020) 53 Cal.App.5th 965, review granted November 10, 2020, S264638, which in turn relied on *People v. McKenzie* (2020) 9 Cal.5th 40—a case involving suspended imposition of sentence, not

10

suspended execution of sentence—we determined that the suspended sentence at issue in *France* was not final and thus that the ameliorative change at issue there applied retroactively.

As outlined above, the procedural timeline of this appeal and the ameliorative change in the law benefitting Clark in the instant case mirror *France*. While our decision in *France* points to the correct analysis of *Estrada* finality, we need not simply follow our own precedent. The Supreme Court itself has now weighed in. In *People v. Esquivel* (2021) 11 Cal.5th 671, 679, the court held that a sentence whose execution is suspended may be final for purposes of appealability, but it is not final for purposes of the *Estrada* retroactivity analysis. Applying the reasoning in *People v. McKenzie*, *supra*, 9 Cal.5th 40, the *Esquivel* court saw "no persuasive reason to presume that the Legislature would wish to extend the benefit of ameliorative legislation to suspended-imposition defendants whose probation is revoked (per *McKenzie*), but not to suspended-execution defendants whose probation is revoked." (*People v. Esquivel*, *supra*, at p. 680.) Under *Esquivel*, we conclude that the appealed order revoking probation and executing the suspended sentence in this case is not final for *Estrada* retroactivity purposes.

**2. Assembly Bill 1869's Ameliorative Change to the Law Applies to Clark's Sentence**

This leaves the question of whether the ameliorative changes to the law created by the passage of Assembly Bill 1869 apply to Clark's sentence. We conclude that they do, and that the judgment against him must be vacated to the extent it imposes any probation-supervision fee.

Assembly Bill 1869 amends the Penal Code by adding the following section: "1465.9. (a) On and after July 1, 2021, the balance of any court-imposed costs pursuant to Section 987.4, subdivision (a) of Section 987.5, Sections 987.8, 1203, 1203.1e, 1203.016, 1203.018, *1203.1b*, 1208.2, 1210.15,

3010.8, 4024.2, and 6266, as those sections read on June 30, 2021, shall be unenforceable and uncollectible and any portion of a judgment imposing those costs shall be vacated." (Stats. 2020, ch. 92, § 62, italics added.)

Now that July 1, 2021, has passed, we think the plain language of this statute means two things for Clark. First, any "balance" on his account for probation supervision fees—that is, any amounts imposed but not paid—is "unenforceable and uncollectible." (Stats. 2020, ch. 92, § 62.) This provision is largely self-executing, and provides both backward-looking and forward-looking relief. Clark may not be charged such fees, and to the extent he already has been charged them, any fees not yet paid are no longer collectible. Second, "any portion of" the judgment against Clark that imposes probation supervision fees "shall be vacated." (*Ibid.*) Assembly Bill 1869, to be sure, is not self-executing to the extent it authorizes a defendant debtor to request vacatur of the "portion" of a judgment imposing an outstanding, uncollectible "balance" of indebtedness. To truly wipe out that phantom debt, any appellant in Clark's position may make such a request, and if he or she does, we must grant it *even though* the pertinent fees are no longer collectible. The language of the statute is mandatory (i.e., "shall be vacated").

This reading of the statute is fully consistent with the Legislature's specific intent in enacting Assembly Bill 1869. As the statute itself sets forth: "It is the intent of the Legislature to eliminate the range of administrative fees that agencies and courts are authorized to impose to fund elements of the criminal legal system and to eliminate all outstanding debt incurred as a result of the imposition of administrative fees." (Stats. 2020, ch. 92, § 2.) The statute supports this intent with a series of legislative findings: "(a) Approximately 80 percent of Californians in jail are indigent and too many enter the criminal justice system due to the criminalization of their

12

poverty. [¶] . . . [¶] (c) People exiting jail or prison face higher rates of unemployment and homelessness, due in part to racial discrimination and the impact of their criminal conviction. [¶] (d) The inability to meet basic needs has been found to contribute to higher rates of recidivism and is a barrier to family reunification. [¶] (e) According to a report by the Ella Baker Center for Human Rights, the average debt incurred for court-ordered fines and fees was roughly equal to the annual income for respondents in the survey. [¶] (f) A national survey of formerly incarcerated people found that families often bear the burden of fees, and that 83 percent of the people responsible for paying these costs are women. [¶] (g) Because these fees are often assigned to people who simply cannot afford to pay them, they make poor people, their families, and their communities poorer." (Stats. 2020, ch. 92, § 1.)

As we understand the parties' contentions, our reading of the statute affords Clark the full relief he seeks with regard to Assembly Bill 1869, albeit on a different theory from the one he urges. As for the Attorney General, we understand him to agree on our first point—that probation-supervision fees that remain outstanding against Clark may not be collected after July 1—but to disagree on the second point. He argues that striking the monthly probation fee from the judgment "is not the remedy provided by the bill. Rather, under the bill's plain language and California Supreme Court precedent, the fee automatically becomes uncollectable starting July 1, 2021, without the involvement of the courts." The Attorney General is correct that the probation-supervision costs are now uncollectible, but he is wrong to ignore that the statute *also* requires, with equally plain language, that the "portion of [the] judgment imposing those costs shall be vacated." (Stats. 2020, ch. 92, § 62.) Perhaps the Legislature provided for this additional form

13

of relief because it understood that even uncollectible debts can burden an individual or family, but regardless of its purpose, the import of this provision is clear.

We acknowledge that the parties have briefed at length whether Assembly Bill 1869 is retroactive under *Estrada*, a debate that might have been important earlier this year, when the briefs were filed.  But now, after July 1, we need not address the question of retroactivity to resolve the case before us.  Assembly Bill 1869 requires that we vacate that portion of the judgment against Clark that imposes a monthly fee for probation supervision.

### C. *The $470 "Criminal Violation Distribution" Fine*

Turning finally to the $470 "Criminal Violation Distribution" fine, "[c]ourts may correct clerical errors at any time, and appellate courts . . . that have properly assumed jurisdiction [can] order[] correction of abstracts of judgment that [do] not accurately reflect the oral judgments of sentencing courts." (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)  "Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)  "If the clerk includes fines in the court's minutes or the abstract of judgment that were not part of the oral pronouncement of sentence, those fines must be stricken from the minutes and the abstract of judgment." (*People v. El* (2021) 65 Cal.App.5th 963, 967.)

As noted above, Clark could have requested the trial court to conform the abstract of judgment to its oral pronouncement of sentence as a ministerial matter even while this appeal was pending, but since the issue is paired with another issue that could not have been presented to the trial court in such a request, we have jurisdiction to entertain it.  We agree that there is error in the minute order setting forth the $470 "Criminal Violation Distribution" fine and it should be corrected.

14

The record reveals significant discrepancies between the trial court's oral pronouncement of fines and fees and the clerk's minute orders and abstract of judgment. At neither the 2017 sentencing hearing nor the 2019 probation violation hearing did the trial court authorize a fine in the amount of $470 or by the name "Criminal Violation Distribution."

Accordingly, we strike the $470 "Criminal Violation Distribution" fine and order the trial court to amend its order and abstract of judgment to accurately reflect the court's oral pronouncement. It appears to us that, by its oral pronouncement, the court imposed a total of $440 in financial obligations, consisting of $60 in criminal conviction assessments, $80 in court operations assessments, and a $300 victim restitution fine. But we leave the determination of the court's intent—specifically, which assessments and fines it intended to impose, and statutory bases and proper denominations—to the trial court.

### III. DISPOSITION

We shall conditionally vacate the judgment with directions that it be modified by striking any unpaid balance of the $100 probation supervision fee and the $470 "Criminal Violation Distribution fine," subject to possible reinstatement of whatever fine or fines the court intended to impose. Should the fine or fines be reinstated, the court shall provide a specific breakdown identifying said fine(s) and the statutory authority for imposition. In all other respects the judgment is affirmed. The matter is remanded to the trial court for correction of the minute order and abstract of judgment. The

15

corrected abstract shall be forwarded to the Department of Corrections and Rehabilitation.

                                            STREETER, J.

WE CONCUR:

POLLAK, P. J.
TUCHER, J.

16

STREETER, J., Concurring.

I would reach and reject the Attorney General's argument that Assembly Bill No. 1869 (2019–2020 Reg. Sess.) (Assembly Bill 1869) is not retroactive under *In re Estrada* (1965) 63 Cal.2d 740. When an amendment mitigating punishment under a criminal statute is enacted during the pendency of an appeal from a conviction or sentence under the statute as it read prior to amendment—which is the situation before us—the problem we must address under *Estrada* is one of "trying to ascertain" as a matter of "legislative intent" whether "the Legislature intend[ed] the old or new statute to apply." (*Id.* at p. 744.) By concluding based on the plain statutory text that Assembly Bill 1869 "provides both backward-looking and forward-looking relief" (maj. opn. at p. 12), we are necessarily resolving that question in favor of limited retroactivity, since, at the request of any appellant entitled to avail himself of the amended statute, we must direct the sentencing court to reach back in time and vacate a "portion" of a previously imposed sentence (Stats. 2020, ch. 92, § 62). Although that is precisely what we are doing in this case, we nonetheless conclude that the issue of retroactivity as framed by the parties is academic, since Clark is getting all the relief he has requested from us. To be analytically correct about it, in my view, a more fulsome statement of our rationale would say that, by the terms of the statute—but no further (i.e., no defendant is entitled to *full* vacatur of court-imposed costs listed by Assembly Bill 1869, paid or unpaid, and therefore to a refund of amounts already paid)—the *Estrada* presumption of retroactivity applies. We almost say that. To avoid confusion, I would be explicit about it.

STREETER, J.

1

Trial Court: County of San Mateo

Trial Judge: Hon. Jeffrey Finigan

Counsel:      Leila H. Moncharsh, by appointment of the Court of Appeal under the First District Appellate Project, for Defendant and Appellant.

              Matthew Rodriquez, Acting Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Bruce L. Ortega and René A. Chacón, Deputy Attorneys General, for Plaintiff and Respondent.

*People v. Clark* / A158238